FILED

01/15/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 10, 2020 Session

## STATE OF TENNESSEE v. JEREMY LYNN THORNTON

**Appeal from the Circuit Court for Benton County**
**No. 2019-CR-86    C. Creed McGinley, Judge**

————————————————————

### No. W2020-00159-CCA-R3-CD

————————————————————

The State appeals the trial court's imposition of a community corrections sentence, arguing the defendant did not qualify for alternative sentencing. Upon our review of the record and the applicable law, we find the trial court erred in not considering all the applicable factors. Accordingly, we reverse the decision of the trial court and remand the matter for a new sentencing hearing consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Michelle Morris-Deloach, Assistant District Attorney General, for the appellant, State of Tennessee.

Kendall F. Stivers, Assistant Public Defender, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal) and Paul D. Hessing, Assistant District Public Defender, Camden, Tennessee (at trial), for the appellee, Jeremy Lynn Thornton.

### OPINION

#### Facts and Procedural History

On June 17, 2019, a Benton County grand jury indicted the defendant for possession of methamphetamine with intent to sell or deliver, possession of heroin with intent to sell or deliver, simple possession of Alprazolam, simple possession of marijuana, possession

of drug paraphernalia, and simple possession of Diazepam. After a jury trial, the defendant was convicted of each count as charged in the indictment.

A sentencing hearing was held on November 19, 2019. After admitting into evidence the defendant's presentence report, the trial court acknowledged that it had presided over the defendant's case and recalled two specific facts from the defendant's trial: 1) the officers responded to an overdose call and had to use Narcan on the defendant because "he was, basically, on the point of death" and 2) the heroin possessed by the defendant was laced with Fentanyl.

The State, relying on the defendant's prior convictions for possession of marijuana, theft, assault, and domestic violence, argued the defendant's sentence should be enhanced based on the defendant's history of criminal convictions or behavior. The State also noted the defendant twice violated a protective order while released on bond in the instant matter. Relying on these violations, the State argued the defendant's sentence should be enhanced based on his failure to comply with conditions of release into the community. Additionally, the State argued the defendant's sentence should be enhanced because the heroin was laced with Fentanyl and, as such, created a high risk to human life. More specifically, the State argued that "by its very nature, Fentanyl is deemed to cause a high risk to human life, and that risk was exposed to those persons who were the [f]irst [r]esponders in this case." Finally, the State argued,

> [i]t's the State's position, Your Honor, that confinement is necessary. It's necessary to protect society. It's necessary to avoid depreciating the seriousness of the offense and provide effective deterrence to others likely to commit similar offenses.
>
> Your Honor, may recall that the jury spoke very loudly, and clearly, when they assessed the fines in this case. They were excessive.
>
> The State also feels that confinement is necessary, because it shows less restrictive measures have been proven unsuccessful for this defendant. Time and time again, he has been given suspended sentences, but continues to commit crimes. Time and time again, he has attended rehab, but continues to resort to a way of life that includes drug use.
>
> The [S]tate would also submit, Your Honor, that circumstances of the offense committed were of an excessive and exaggerated degree, and that he didn't just possess this Schedule I and Schedule II [d]rugs with [i]ntent to [d]eliver, he almost died from it.

Not to mention that he put the [f]irst [r]esponders at risk, but then this proof would show at trial, Your Honor, that then he tried to walk away from medical care after it was being provided to him, after being Narcanned.

So, it's not just the [p]ossession with [i]ntent to [d]eliver, Your Honor. It carried higher consequences and significant effect. So again, the State would suggest that confinement is reasonable under these circumstances.

In response, the defendant noted that there was another individual in the vehicle with him and that all the drugs found in the vehicle were in a bottle which was located between the defendant's seat and the console. However, the driver was not charged with a crime. The defendant also noted he was not charged with possession of Fentanyl or did the lab report did not mention Fentanyl. Additionally, the defendant argued that despite the jury's finding to the contrary, there was no proof "indicating to anybody that these drugs were possessed with the intent to distribute or sell." The defendant also argued he was an addict and has not been able to conquer his addiction. Finally, the defendant claimed his recent violations of the order of protection were non-violent in nature. As the defendant continued to argue he deserved some form of alternative sentencing, the trial court interjected stating, "I already know what I'm going to do, if you want to know."

When the State sought the opportunity to respond to the defendant's argument, the trial court made the following findings,

No. I've given you all the time. I've tried this case. [The defendant], the biggest risk that he poses is to himself. It's obvious that he's got a severe drug problem, and the jury didn't subscribe to [the defendant's] simple [p]ossession argument, and he's been convicted of two (2) Class B Felonies. The Court is going to sentence him to ten (10) years on each of those. That's Counts 1 and 2. I've already announced the earlier fines. As far as the other four (4) counts, it will be eleven twenty-nine (11-29) on each of those. The grounds don't really exist for the Court to run sentences consecutive. He only has a misdemeanor record. So as a result of that the Court feels he's an appropriate candidate for split confinement. I'm going to order that he serve one year. Be given credit for time served, and then, when he is out on probation, I'm going to --- It will be State Probation. When he is out on State Probation, I'm going to order that he be assessed for A and D, and follow all recommendation, including rehab.

When the State noted that the defendant, as a result of his conviction for possession of heroin, was not eligible for probation, the trial court, without making any findings pursuant to Tenn. Code Ann. § 40-36-106, immediately announced it was sentencing the

- 3 -

defendant to community corrections. In response, the State argued the defendant did not qualify "for community corrections for a number of reasons. His past pattern of violent behavior, as evidenced by the domestic violence [] conviction, the assault conviction, as well as . . . he has failed to comply with the terms of his release on probation, previously, and you have to be . . . eligible for probation to qualify for community corrections, and he's not eligible for probation by statute, because of his Schedule I here." The defendant, relying on the special needs section of the community corrections statute, *see* Tenn. Code Ann. § 40-36-106(c), argued, "the Court is authorized to sentence an eligible offender as defined in this section to any appropriate community-based alternative to incarceration provided in accordance with the terms of this chapter, and under the additional terms and conditions as the Court may prescribe, which you have done, in lieu of incarceration in a state penal institution, or local jail, or workhouse."

Finally, the State argued that the defendant's prior assault conviction and two violations of an order of protection established a "past pattern of behavior of violence" made the defendant ineligible for community corrections. The trial court made no specific findings concerning the defendant's assault and domestic violence convictions but did find, however, the defendant's violations of an order of protection "collateral" to the defendant's case. The trial court then affirmed its decision to place the defendant on community corrections after the service of one year. This timely appeal followed.

### *Analysis*

On appeal, the State contends the trial court abused its discretion in sentencing the defendant to community corrections rather than incarceration. The State argues the defendant is not statutorily eligible for community corrections because of he has "a present or past pattern of behavior indicating violence" and "a pattern of committing violent offenses," and the defendant is not eligible under the special needs section of the community corrections statute because his conviction for possession of heroin made the defendant ineligible for probation. *See* Tenn. Code Ann. § 40-36-106(a)(1)(E)-(F) and (e). The defendant insists the trial court "properly exercise[d] its sound discretion when it concluded that [the defendant's] two prior misdemeanors were not enough to show 'a pattern of violent behavior' that would preclude a community corrections sentence." Upon our review of the record and the applicable law, we reverse the judgment of the trial court and remand the matter for a new sentencing hearing consistent with this opinion.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6)

any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See id*. §§ 40-35-114, -210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

This Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Despite the adoption of a more deferential standard of review in *Bise*, courts have continued to emphasize the need for trial courts to "place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Bise,* 380 S.W.3d at 705-06 n. 41 (emphasis omitted) (quoting Tenn. Code Ann. § 40-35-210(e)). This serves to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary. As explained in *Bise,* however, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the

presumption [of reasonableness]." *Id.* at 705–06. Thus, "while a trial court's less comprehensive findings may require appellate courts to more carefully review the record, sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Id.* at 706.

Here, it is not completely clear as to the trial court's rational for placing the defendant on community corrections. While the trial court recalled the facts of the case and made passing reference to the defendant's criminal record, he did so when ordering a probationary sentence. However, when the State pointed out that the defendant's conviction for possession of heroin disqualified him from probation, the trial court immediately ordered the defendant to serve his sentence on community corrections without making any additional findings. More specifically, when the State, relying on the defendant's prior convictions for assault and domestic violence and two violations of an order of protection, argued the defendant did not qualify for community corrections based on his past pattern of behavior indicating violence, the trial court, without hearing any proof relating to the violations, simply stated, "well, there's just two order of protection [violations] and they are collateral to this. I'm not going to consider that prior acts of violence." Despite the State then reminding the trial court of the defendant's convictions for assault and domestic violence, the trial court simply reaffirmed its decision to place the defendant on "community corrections after the service of one year."

While great deference is given to the trial court in sentencing matters, the trial court is required to make minimal findings at best. Here, however, our review of the record reveals the trial court simply placed the defendant on community corrections once the State pointed out that the defendant was not eligible for probation. Contrary to the defendant's claim that the trial court found his criminal history did not amount to a pattern of violence, no such finding was made. Rather, the trial court simply stated that two violations of a protective order were "collateral" issues. Again, we note that the trial court made this finding without any proof presented. Additionally, we are perplexed by the trial court's finding that these violations, which occurred while the defendant was released on bond after his conviction in the instant matter, were "collateral" and not relevant to the defendant's suitability for alternative sentencing, especially one involving release into the community. Not only did the trial court fail to hear any evidence on the nature of the defendant's violations or make a finding as to whether these violations were violent in nature, but it also failed to make any finding relating to the defendant's convictions for assault and domestic violence. Moreover, the trial court failed to make any findings pursuant to Tennessee Code Annotated § 40-36-106 as to how the defendant qualified for community corrections. Based on our review of the record, the trial court abused its discretion by imposing a sentence of community corrections without making any findings concerning the defendant's violations of a protective order, whether he has a history of

violence, and his overall suitability for community corrections. Therefore, we reverse the finding of the trial court and remand the matter for a new sentencing hearing consistent with this opinion.

Finally, while it does not appear from our review of the record that the trial court necessarily relied on the "special needs" section of the community correction statute, the defendant argued during the hearing and now on appeal that he qualifies under the statute. *See* Tenn. Code Ann. § 40-36-106(c). Because we are remanding this matter for a new sentencing hearing and the defendant has argued he is eligible for community corrections under the special needs section, we will address the defendant's claim.

Section (c) of the community corrections statute, which is sometimes referred to as the "special needs" provision, states:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c). In other words, felons not otherwise eligible under the criteria of subsection (a) are eligible under subsection (c) of Tennessee Code Annotated section 40-36-106 if they are unfit for probation due to a history of chronic alcohol abuse, drug abuse, or mental health problems, but their special needs are better treatable in a community corrections program than in incarceration. However, before being placed in community corrections based upon Tennessee Code Annotated section 40-36-106(c), an offender must first be eligible for regular probation. *State v. Johnson*, 342 S.W.3d 520, 522-23 (Tenn. Crim. App. 2009); *see also, State v. Cowan,* 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000); *State v. Kendrick,* 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); *State v. Boston,* 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); *State v. Staten,* 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989); *State v. George C. Peery, III,* No. E2008-00086-CCA-R3-CD, 2009 WL 537064, at *4 (Tenn. Crim. App. Mar. 4, 2009); *State v. Jennifer Leslie Pendleton,* No. E2007-00578-CCA-R3-CD, 2008 WL 2805609 (Tenn. Crim. App. July 22, 2008) (concluding that a defendant convicted of Tennessee Code Annotated section 39-17-417(i) was not eligible for probation and, therefore, could not be placed in community corrections under the "special needs" provision). Because the defendant's conviction for possession of heroin disqualifies him from receiving a sentence of probation, he is not eligible for community corrections under the special needs section of the community correction statute.

## *Conclusion*

Based on the foregoing, we reverse the judgment of the trial court and remand this matter for a new sentencing hearing consistent with this opinion.

_____
J. ROSS DYER, JUDGE